We'll hear argument next in Case 14-9496, Manuel v. The City of Joliet. Mr. Eisenhammer? Mr. Chief Justice, and may it please the Court, I would like to make three initial points. First, what this case is about is whether the petitioner may bring a Fourth Amendment claim for unlawful detention pursuant to legal process. Second, this case is not about whether the decision to prosecute is governed by due process, the Fourth Amendment, or any other amendment. And third, this case is not about whether there's some constitutional tort named malicious prosecution. All we ask the Court to do is to affirm your numerous suggestions made in Albright that the Fourth Amendment supports this cause of action and bring the Seventh Circuit in line with all other ten circuits that rule on it. But you need to get past the statute of limitations problem, and to do that, you need to characterize it, as I understand it, as a malicious prosecution claim. Otherwise, it's time barred. What we need to do is determine not the statute of limitations, which is two years, set by the State, but the accrual period. And in Wallace, the Court has said that you normally look to not the State law, but it's a Federal question that you normally look in reference to the common law. And in Wallace, they did say that that would be malicious prosecution that does have, as an accrual period, favorable termination. But favorable termination has nothing to do with the Fourth Amendment claim, right? I mean, whether your prosecution is favorably terminated or not, the Fourth Amendment rule begins when your Fourth Amendment rights are violated with, say, an illegal search. Whether you eventually are convicted or acquitted, really, you have a claim for an illegal search, if there's been an illegal search, without regard to favorable termination. Right. But our claim, technically, here is detention without probable cause, not the search that occurred when he was arrested. Right. But, I mean, regardless, whatever the Fourth Amendment claim is. And that detention went through for 48 days after he became subject to legal process. Was he subject to proper legal process? If legal process is corrupted, because there isn't, I mean, I always understood legal process, as used in Wallace and in other of our cases, is an independent intermediary, generally a judge or a grand jury or someone, who looks at the facts as they exist and independently makes a determination whether probable cause has happened. If you have a corrupted legal process, where what the independent adjudicator is looking at is not true, because it's based on false information, have you received legal process, proper legal process? You haven't received proper legal process. It's been, you're correct, it's been corrupted. And so, I thought, if you've never received it, then doesn't your time to accrue for the improper detention accrue when you're no longer detained? Here, it was the not guilty, correct? Correct. So, it's not a question of whether, when it starts, the question is, when does the illegal detention finish? Correct. Correct. Because you have, there's been no intermediate force, no intermediary stepping in and breaking the chain of causation, correct? Correct. That's correct. Am I understanding your argument correctly? Yes, you are, perfectly. I wish I could take credit for that, but. No, but I, I, I, the only way I could think of it was thinking of it this way, because you're not claiming malicious prosecution or not. Right, right. You know, Wallace talked about malicious prosecution, but this is a larger issue of 1983 jurisdiction, which is, you know, what is a proper accrual period for a constitutional, a constitutional violation? We don't, we're not. Detention without probable cause. Right. And it's, it's, you don't, you're not, you're not straightjacketed into a particular common law provision. You're, you're, you have the right to fashion one that does justice, and this is the one who does, does justice. I'm, I was confused. I thought there was a malicious prosecution claim here. Mostly because the question presented says whether an individual's Fourth Amendment right to be free from unreasonable seizure continues beyond legal process so as to allow a malicious prosecution claim based upon the Fourth Amendment. Yes, but that's, that's just the label, and that's what the, what the court, at least in Wallace, has used as a label for talking about these type of claims, and another in Gerstein too. It's just, it's just a label to, in a sense, distinguish this case from detention without legal process. Well, let me, let me give you a hypothetical that is actually close to this case. Officer fabricates evidence in order to arrest and book the defendant. Then there's a Gerstein hearing within 48 hours. Evidence is still fabricated. Same fabricated evidence is introduced. He's held for three months. Then there's a pre-trial suppression hearing. The evidence is still fabricated, and he's still held for two more months. Then there's a trial. Evidence is still fabricated, and he's convicted, and he's held for six more months. Then there's an appeal filed, and then suddenly they find out the evidence is dismissed. Fourth Amendment violation for the entire detention? No, we would say the Fourth Amendment, at least based on your cases, the Fourth, the Fourth Amendment claim ends at conviction. Okay. And then the due process claim or whatever. Why is the trial and conviction any different than the Gerstein hearing? They're, they're both a legal process. There's an inquiry. Why is it that the Fourth Amendment applies after the Gerstein hearing, but not after the conviction? One reason is that the Gerstein, the Gerstein hearing is a non-adversarial hearing. So it would be a, a grand jury proceeding. Well, a conviction, in a sense, presumes that you're, you're, you, you, you were, you were held with probable cause, and then you, you really have a due process claim after that. Under malicious prosecution law in the States generally, just as a general principle, would there be a malicious prosecution claim for the fabricated evidence in the Gerstein case or in the pretrial suppression hearing? I believe, I believe so. Because it meets the elements. So then they would be over, so that at least there's a legal recognition that there can be a malicious prosecution. No, it's really a Fourth, we're here, it's a Fourth Amendment claim. We're not, we're not raising. I'm asking if under state laws, tort law generally, you can bring a malicious prosecution claim if there's fabricated evidence produced at the Gerstein hearing that results in, in your detention. In your release? That results in your detention. Well, yes, but. That's why there's damage and you're suing. Right, but you have to be, there has to be a favorable termination in order for you, that's an element of, of state court malicious prosecution. So you need to be. Okay, it's terminated six months or six weeks later. There would be a malicious, that would be a malicious prosecution claim under state law. Why do you make the cutoff conviction if it turns out even on habeas that the police have lied all along and there was never any basis for holding this person? Why doesn't, why don't you have your Fourth Amendment claim until the point where you're released from this unlawful custody? You, you could if you, if you rule that way. Generally, this court has ruled that after conviction there's, there is, there is due process, your trial rights have been violated, so that has been a different amendment that you've gone under. In this case, in this. Not just, it's the same right, it's the right you had from the very beginning. It could be, it could be a Fourth Amendment right. They could have more than one amendment cover more than one, that's the same set of facts. Well, but there's just a different consequence to whether you term it a Fourth Amendment right or a due process right under Parrott v. Taylor. Well, we're claiming it's a Fourth Amendment right. Well, I know, but you just answered in response to the question that, well, it could be both. Well, I've always. Yes, it could, it could be both. Usually, or at least reading Justice Kennedy's concurrence, it appeared that the due process provision, the due process claim, dealt with the issue of whether the prosecute. As opposed to this issue, which is the decision to hold somebody, detain somebody, pending the decision to prosecute or trial. So it's the Fourth Amendment that really covers this rather than due process. Is, what happens to the person who's let out on bail? Are they out of luck under your theory? No. No, because. Are you defining detention as broadly as Justice Ginsburg was? Yes. And in Gerstein, the Court did make recognition that detention could go beyond being released, depending on the conditions of the release. So it's not just, I would say it's not just Justice Ginsburg's concurrence. It was this Court's opinion in Gerstein that that was a possibility. Can you explain why, even if we accept your theory that, that the unlawful detention continues until he's released, why shouldn't the statute of limitations trigger be when he is initially arrested? Why should the trigger for the statute of limitations be different just because we label this Fourth Amendment? I think there's some good reasons for that. They were expressed in Heck, which applies in this particular case, too. You don't want to have parallel litigation. You don't want to have conflicting decisions between the state and a criminal court. And you don't want to have a collateral attack. That collateral attack works to the detriment of the prosecution and of the defense in the case. I think Justice Kagan's opinion in Calley illustrates the harm that could happen to the prosecution if you allow someone to collaterally attack, use a sophisticated and improbable cause while the case, while a criminal case is pending. It works to the detriment of the prosecution. Mr. Eisenhower, why should we even get to these questions? As I understand this case, the Seventh Circuit does something, says something that no other circuit does, which is to say that they say that there's no Fourth Amendment claim under Section 1983 at all, full stop. If we think that that's wrong, oughtn't we to just send everything else back to the Seventh Circuit to decide what they think the Fourth Amendment claim looks like? In other words, what elements it has, what accrual date it has, anything that they think about this Fourth Amendment claim, send it back to them, having told them that they're wrong about whether this Fourth Amendment claim exists. Why isn't that? I mean, all this other stuff, the Seventh Circuit hasn't told us what they think about it. Circuits are split on it. It hasn't really been briefed because the principal question has been whether there is a Fourth Amendment claim. Why shouldn't we just send it back to them to decide? I would be in agreement with that. Because that's- You would be in agreement with that. I would be in agreement with that. I wasn't sure. I thought that you were arguing. I only, only in response to the questions. I think the question that we've raised is solely the issue of does the Fourth Amendment cover detentions pursuant to legal process? But don't we have to know- I'm sorry. Without legal process. Without, I'm sorry, without, no, with, with- Well, you're saying it's improper legal process. Yes, but it's still a legal, it's still a legal process. I mean, it was corrupted, but it was still started with that. But don't we have to know what kind of a claim it is before we can say whether it exists? Yes, and you, the starting point is the Fourth Amendment. If you answer the question on the Fourth Amendment, because the initial question- So you want us to say there's some kind of a Fourth Amendment claim, but we, we're not, we don't know what it is, but there's some kind of a claim. Now, you go back and tell us what kind of a claim it is? No, I'm saying the Court can say that this is a Fourth Amendment claim. It's a claim for unconstitutional detention. Yeah, just as if, if they had brought it up in Albany. What the set of limitations is on that claim, or what the accrual period is on that claim, is something that we don't have to decide in order to say, yes, you have a claim under the Constitution for improper detention. Correct. Well, but, I mean, the, the alternative that is argued is that it's a due process claim. And whether or not they coexist, or whether the particular period that you're complaining about is properly characterized as a detention without due process, as opposed to a claim under the Fourth Amendment, would certainly be pertinent in deciding whether or not to say there is a Fourth Amendment claim. No. I, I think you can decide whether it is a Fourth Amendment claim or a due process without referencing the statute of limitations. That issue is, in a sense, before you. You can't answer it. We're not talking about, as I said before, we're not claiming that the decision to prosecute, which might be a due process claim, has been violated. All we're talking about is the detention, the detention subject to legal or corrupt legal process. That's the only claim, the claim that we're asking for. The Court has indicated both. If the detention, you've described this in various ways. Is it a detention without constitutional probable cause? Is it a detention with, with no proper legal process? What, where exactly is the Fourth Amendment violation? Because in false arrest and false imprisonment claims, according to Wallace, as soon as you get legal process, there's been an intervening end to the false imprisonment because someone else has imprisoned you. So what remains in this case? How do we define the constitutional violation? So. All right. We reserve time after, after just some more questions. I think you, this is a Fourth Amendment claim that you can, you could describe as being corrupted by, you know, a corrupt Gerstein hearing. You could claim it, it prolonged a dissension beginning at, at, at legal process the way County of Riverside or Rodriguez, where it was extended just for, the traffic stop was extended just for seven minutes to do a dog search. And this court found that it was, it was a seizure and an improper, an improper seizure. This is exactly what happened here. The, the, the seizure was extended improperly because of the fabrication by the police. Thank you, counsel. Ms. Eisenstein. Mr. Chief Justice, and may it please the court. We think that this court should locate the constitutional right at issue in the Fourth Amendment for the reason that the Fourth Amendment does apply to pre-trial detentions as this court has long held. The Fourth Amendment requires any prolonged period of detention to be supported by one valid determination of probable cause at the outset of that, at that period of detention. The Seventh Circuit error here was to find that the Fourth Amendment stops operation once criminal charges are filed. And this court has long recognized as well that there's a variety of ways to make that probable cause determination, including by the same procedure used to bring the criminal charge itself. Suppose it's a close question about probable cause, no, no fabricated evidence, just was the information available to the police sufficient to make the arrest? And the court wrongly determines that there was probable cause and he's held for six weeks. Fourth Amendment violation? Your Honor, it may be a Fourth Amendment violation, but there may be no one to sue under those circumstances, under Section 1983. Why is it a Fourth Amendment violation? If it was close, then the decision was reasonable. Of course, Your Honor. I think I took Justice Kennedy's hypothetical to presume it was wrong in the sense of wrong and unreasonable. I think a wrong but reasonable... No, it's wrong but reasonable. Well, then, Your Honor, no, I don't think it would be a Fourth Amendment violation at all. Why? He's being detained. Well, because, Your Honor, I think... Violation of the Fourth Amendment. Well, Your Honor, because I think the... And that's why it seems to me that there's a good argument that we should be talking about malicious prosecution, not the Fourth Amendment. Well, Your Honor, I think that the Fourth Amendment does afford reasonable mistakes of fact and law, for that matter, in allowing someone to be detained. So it's not that, in fact, the probable cause standard itself allows for factual errors in the determination. But here, the allegation that Mr. Manuel claims is that he was detained on drug charges that entirely on fabricated evidence. And we think that that claim is a claim of detention without probable cause under the Fourth Amendment. It's unreasonable. And the defendant wouldn't have qualified immunity. But it's not corrupt. There's nothing malicious about it. Would there be a claim? Your Honor, I think it depends on what the causation would be in terms of the officer role in bringing the charge. So if the officer puts forth and has the... Is the one pressing to bring a charge that is not reasonable, objectively unreasonable under the Fourth Amendment, subject to qualified immunity and other bars to suit, he may be liable. But to the extent to which the error falls with the magistrate or the prosecutor, those kinds of claims would be foreclosed by the absolute immunity that those individuals... And what if it's an FBI agent? Well, Your Honor, I think that Bivens' liability for a federal officer follows the same sort of immunities and rules. I thought you said in your brief that the standard for state and local law enforcement officers might be different from the standard for federal law enforcement officers. If I did, Your Honor, I don't believe we were referring to... If you could clarify which standard you mean, the standard for qualified immunity or... On page 30 of your brief, 30 to 31 of your brief. Well, Your Honor, I think that in those particular instances, that relates... That piece of our brief relates to special factors that could potentially cancel hesitation in a Bivens' claim that don't necessarily apply to Section 19... Yeah, well, that's what I'm saying. So you think that there should be a remedy for violations by state and local police officers, but not under identical circumstances, possibly if it's a federal officer? Not in this instance, Your Honor. We wouldn't draw that distinction. And I'd also... Then what were you saying in your brief? I don't understand it. I think that there may be other circumstances not presented by this case, not presented by a case of fabricated evidence or unreasonable pursuit of a wrongful criminal charge that may lead to a different result under 1983 under Bivens. But I don't think we have to... We just wanted to make sure that the Court understood that the Bivens' claim may have different ramifications. That's right. I mean, I may be missing something. I think this is quite a simple case. A policeman makes an unreasonable stop and an unreasonable search, thereby violating the Fourth Amendment. Now, you can sue him, assuming you overcome other hurdles. Now he takes you off and puts you in prison. Either with a magistrate or without a magistrate. And you are, therefore, being unreasonably detained. It's an unreasonable seizure pursuant to the Fourth Amendment. Therefore, it's a violation. Then you have a trial. And using the same rotten evidence, you're convicted. There you don't, though you could. But the reason that you don't is because you are viewed as, by the law so far, being in jail now as a result of your conviction. And the reason, I guess, is practical. We don't want to look into all those convictions and their different standards. Now, that's what's the framework in my mind. Is it right? Absolutely, Your Honor. That is exactly the framework that the government puts forward. That it's not just the mere fact of being held in jail, but that the constitutional right depends on what process was infringed. All right. So let's stop. And I understand you so far. The question presented was, I think, I don't have it. I do have it here. So whether an individual's Fourth Amendment right to be free from an unreasonable seizure continues beyond legal process so as to allow a malicious prosecution claim based upon the Fourth Amendment. The Chief Justice was right. The question presented is, does the Fourth Amendment consonant house a malicious prosecution claim? Which is something very different than what you're describing as a Fourth Amendment seizure and detention without legal process. That's correct, Your Honor. Because in our view, the constitutional inquiry is step one. But step two is to determine the elements and accrual date and other prerequisites to suit under a Section 1983 tort. And in that instance, the accrual may be governed by the closest common law analogy. When the challenge at its core is arguing that the wrongful prosecution and the wrongful institutional process led to the detention without probable cause, in our view, the closest analogy is a malicious prosecution suit. And that that accrual rule But do we have to take, are you suggesting we have to take every element of the, whatever the elements are? Because from what I understand from the briefing, malicious prosecution is defined differently from state to state. So if that's the case, what are the elements that you see for a 1983 claim? Does it include malice? Your Honor, we do not think that a constitutional tort under 1983 simply adopts common law or state tort elements of malicious prosecution. Only the accrual rule is based on this Court's decision and Hacken-Wallace are taken up by the common law analogy. In terms of malice, no, Your Honor, we don't think malice, as it's known at common law in most state courts, is an element of this kind of claim. We do advocate that this Court treat a probable cause determination underlying a criminal charge the same way it treats a probable cause determination underlying a search warrant, which includes the Frank standard. We don't think of that as a malice standard at common law, but rather an extension of the Frank's doctrine. Well, I know we've said inspired examples of what we take to flesh this out, but it does seem to me to be just pretty result-oriented cherry picking. If once you say, well, here's a claim, now we'd like the statute of limitations part, so we don't take that in. We don't want to have to show malice, so we take that. I mean, I don't know if we're still holding true to the approach in Wallace. If you just start picking things in and out depending upon the demands of the particular case. Well, Your Honor, I think that Wallace did say that federal accrual rules in particular were governed by the common law analogy. We think that that's as far as it goes in terms of choosing from the common law. The statute of limitations, for example, is borrowed from state law. But here, the Seventh Circuit's view of accrual flowed from its error as to the scope of the Fourth Amendment. So to Justice Kagan's proposal that this go back, in many ways, we think that's absolutely appropriate, because the Seventh Circuit erred by holding that since the Fourth Amendment stops at the time criminal process begins, it thought you can't have a malicious prosecution analogous claim, because there is no such Fourth Amendment claim. If you peel that error away, we think that even under Seventh Circuit jurisprudence, they would agree that a favorable termination requirement would apply in such circumstances. When does the Fourth Amendment claim stop? I think Co-Counsel said, if you're convicted, it stops. In response to my question, suppose none of this comes out until habeas, and then we find out the police have lied from day one. So, Your Honor, we do see those as distinct phases, and that when you're held on individual before trial pursuant to a finding of probable cause by a magistrate or a grand jury, that that is a Fourth Amendment claim. But once the person is held pursuant to a finding beyond a reasonable doubt at trial, that due process and other constitutional protections take over. But suppose there's a pretrial suppression hearing in which both parties are represented, and the court reaches a wrong result with reference to the admission of the evidence. Does the Fourth Amendment violation still continue? May I answer, Your Honor? Your Honor, I think that it may be a Fourth Amendment violation, but whether a plaintiff could bring those kinds of claims would be governed by preclusion principles and other similar bars once that issue had been actually litigated in the State court. In a State court proceeding, the State analog, what would be the rule of a cruel ending? You get convicted, you don't find out about the false testimony until habeas, State or Federal. When in that situation would a cruel occur? In our view, when the case was dismissed or overturned, Your Honor. Thank you, counsel. Mr. Scudro. Mr. Chief Justice, and may it please the Court, I think it's very important to frame what is before the Court this afternoon. And to begin, I think it's essential to note, we are not disputing at any point in this litigation that misstatements made that result in a finding of probable cause at a Gerstein hearing is a Fourth Amendment violation, nor does the Seventh Circuit disagree. The reason this came up to the Seventh Circuit as it did, and this may be important in understanding the context, this is on a motion to dismiss for statute, for violation of the statute of limitations. All of the claims were dismissed but one, the one that was appealed. And that one survived momentarily in the district court, because Petitioner claimed that that one claim has a favorable termination element because it is malicious prosecution. He reiterated that claim before the Seventh Circuit, and the Seventh Circuit reached two conclusions. One, you have a Fourth Amendment claim, which they discuss, and the only claim before them was based on the lie at the Gerstein hearing. You have a Fourth Amendment claim, but it has already accrued, it accrued too early, it is untimely. Now you're asking us to recognize a different breed of Fourth Amendment claim, namely a malicious prosecution Fourth Amendment claim, because you'd like to overcome the time bar. We do not recognize that Fourth Amendment malicious prosecution. Kagan. Kagan. I just have to say, I read this differently, so you can tell me why I'm wrong. Sure. But in the last column of the Seventh Circuit's opinion, so there are twice where the Seventh Circuit says what it thinks. The first time it says, when after the arrest or seizure, a person is not let go when he should be, so it's after the initial seizure and then the person is not let go, the Fourth Amendment gives way to the due process clause as a basis for challenging his detention. And then in the last paragraph, it says, once detention by reason of arrest turns into detention by reason of arraignment, the Fourth Amendment falls out of the picture. So it seems to me that twice, the Seventh Circuit says very clearly that you have this Fourth Amendment claim until arraignment or legal process. And after that, the Fourth Amendment falls out of the picture. And at the very basic level, before you get into these questions of what's the accrual date or anything else, it seems that that's the thing that the petitioner is saying is wrong. That the Fourth Amendment claim continues after arraignment or after legal process. Now, when it accrues, when it doesn't accrue is a different question. But it's still a Fourth Amendment claim, and that's what the Seventh Circuit rejected. Your Honor, I think I would direct the court to the top of JA 103 as well, where the court also notes the fact that they have found Fourth Amendment claims even in terms of false information in an incident report, even at a preliminary hearing, which comes long after the initiation of process. What the court in context has read, and by the way, this is consistent with past statements by the Seventh Circuit. The fundamental statement the court has made, and this comes from Newsom, the 2001 decision from which this jurisprudence has blossomed in the Seventh Circuit. Relabeling a Fourth Amendment claim as malicious prosecution would not extend the statute of limitations. This has been the nature of the battle. And on page 21 of the cert petition in this case, petitioner makes clear why the question presented doesn't end halfway through. It doesn't ask merely whether there is a Fourth Amendment right that survives the initiation of process. If by process they mean Gerstein hearing, we agree. And I think the Seventh Circuit would agree as well. But it goes on to say, so as to allow for a malicious prosecution claim, and on page 21 of their cert petition, they explain to the court what they mean by that. When they say that the fate of this appeal to this court turns on whether the court does or does not adopt a favorable termination element. And that that's why this makes an ideal vehicle to answer Justice Alito's earlier question, which is, what are the elements of this claim? I didn't think that was a difficult question. I thought that everyone agrees that if a policeman wrongly arrests you, you know, maliciously arrests you, etc., and there you are in his custody, and he brings you over to the jail, puts you in the jail. Up until the point you see the magistrate, you have a claim for false arrest. Correct. And we said that that claim for false arrest is a constitutional claim. Yes, Your Honor. Violates the Fourth Amendment. What time limit applies? The false arrest time limit, because that's the most analogous. Yes, Your Honor. Then we get into the next stage. Now you're in front of a magistrate. And the magistrate says, stay in jail for two more months. Does that violate the Fourth Amendment? Not malicious prosecution. Does it violate the Fourth Amendment? The reason that we tend to think it does is because all the circuits have said it does. That is, Judge Higginbotham said that in the Fifth Circuit. A lot of the circuits picked that up. I'm not saying every one. But they said, that too violates the Fourth Amendment. Now we have a problem. What statute of limitations do we use for that one? And there, the circuit seemed to have picked malicious prosecution, not because they're going to follow every element, but because it's the state law that provides the closest analogy. And that seems to me where we are in this case. We don't have to go much further than that. Am I right so far? You are correct. The issue before the court is, which accrual date for limitations periods should the courts be applying? So you will accept, or will you accept, for purposes of this argument, that once this individual is brought by the policeman to jail, and they go before a magistrate, and the magistrate, using the same bad evidence, says, stay here in jail for a while, for a week anyway, until we get to trial, that that period is a violation of the Fourth Amendment, assuming that they were all lying, et cetera? Your Honor, yes. Yes. So far. Okay. Then the question is, do we use the malicious prosecution as an analogy, not all the elements? And so now the question, great, this is fabulous, I get to the narrow questions I have, why isn't it a good analogy? Your Honor, let me answer why it's not a good analogy. And I'll also answer, and I think flesh out just slightly, whether or not this remains a — the moment in time when the police officers lie to — to submit an affidavit with falsehoods to a magistrate at a Gerstein hearing, and the magistrate finds probable cause, what we do not dispute, and what we do not think the Seventh Circuit would dispute, is that that is a violation of the Fourth Amendment. Now, the question of whether or not malicious prosecution is the proper analogy, the answer is absolutely not, and Wallace tells us why not. Wallace tells us, they — now, the Petitioner has shifted just slightly from a reliance on common law favorable termination, which is what most of the circuits on their side of the split have done. This also goes, I think, to Your Honor's question and to your point. Most of the circuits on the other side of the split have used favorable termination, but they've done so by adopting it as part of the underlying four-element common law tort, and they think if that's what we're calling it, then it's going to have favorable termination. A smaller number have relied on an extension, a drastic extension, of this Court's decision in Heck. And that's the request now made by the Petitioner in their reply brief, that Heck ought to be expanded to apply here. But Wallace was very clear, Heck only applies the delayed accrual principle and the favorable termination element that comes with it. Apply only where you have an extant conviction. And that doesn't exist here. The Court went through a mental exercise. They said, look, if you can realize that you have a Fourth Amendment claim before you're convicted, if the elements can be in mind, you know you've been wronged in a Fourth Amendment way before you're convicted, then that is not a claim that is entitled to the delayed accrual principle of Heck. And the reason was very simple, because, as this Court said in Gerstein, Fourth Amendment contemplates that you can have bad arrests and good convictions. And nevertheless, the Fourth Amendment protects the innocent as well as the guilty. And expanding Heck to apply in a circumstance where all you have is an ex parte requirement, or finding, rather, of probable cause, requiring that civil plaintiff to then prove vindication at the end of the day, would close the door on a potential universe of Fourth Amendment claims and instances. Ginsburg. Why? You can have discrete claims. One wrong is you never should have been arrested, so you have a Fourth Amendment claim for that. Another wrong is they kept you in detention. They extended that arrest. So I don't see why you have one wrong which ends on arrest. But then if you are continuing to be held based on trumped up false information, why isn't that like a continuing tort? And it continues until it ends. Well, Your Honor, just to make sure that I've been clear, again, we do agree that the lie, the second lie Your Honor has described, the lie before the magistrate, is actionable under the Fourth Amendment. If the question is, why then doesn't the accrual period run from when one is ultimately released, I would make a couple of points in response to Your Honor's question. First, Petitioner has been very careful not to make that argument. Indeed, the continuing seizure idea would be inconsistent facially with the cert petition, which claimed they need the benefit of favorable termination to prevail. They, of course, wouldn't need it if they were instead arguing for a period of a continuing seizure. Lower courts have rejected the notion of a continuing seizure, and they're not raising it here, and I think the reason may be twofold. The first is that it runs into the face of traditional accrual principles that this Court has said, cases like Rick's and others, that it's not the period of harm that matters for accrual purposes. It's when one first experiences the harm, and thereby has all the elements needed to proceed. And a case like Morgan, which was a hostile work environment case, is really the exception that proves the rule. In many ways, it tells us why or how narrowly the Court has construed the exceptions to this typical accrual principle. Hostile work environment does require precisely what Your Honor describes, because it's impossible to know precisely when a hostile work environment begins. Is it the second comment or the fifth or the tenth that someone has to endure in the workplace, and therefore the Court is willing to consider it as a monolithic whole and treat it that way for accrual purposes? But again, that's the exception that proves the rule. As Wallace itself concluded, there can be a cutoff which Wallace imposed between the initial arrest and the post-process arrest. And Wallace itself, in that regard, I think breaks through the notion of a continuing seizure. The final point I would make, and I think this comes out in one of their amicus briefs, namely the brief by Professor Altshuler, taken to its logical conclusion, the logic of continuing seizure may lead one to conclude that the seizure doesn't end until the ultimate period of incarceration concludes. And what that means is now you have potential civil plaintiffs bringing claims 10, 15, 20 years down the road without any prior notice to the would-be defendants, no ability to maintain evidence and so forth. Why you need to give evidence to somebody who's fabricated the reasons why you're in jail? And I don't know why you would think that it's important to cut off recovery against a police officer who bases an arrest solely on fabrication. It doesn't seem so horrible to me. Years later or immediately, if you've done something as untoward as that, as unconstitutional as that, why should it matter? Your Honor, two points. The first is, and this is a point of clarification, we're not suggesting that damages arising from lies at a Gerstein hearing, for lack of a better term for it, would not run subject to traditional common law approximate causation principles through part or all of the pretrial period. There may well be interrupting events, but that I just want to make clear, we're not suggesting that those damages may not be available. In this case, had the claim been brought timely for the full 48 days, depending on how those common law approximate cause principles would shake out. The other point, and this is one that the States made in their amicus brief in Wallace, they've made it again, as have the municipalities as amici. They've made the point that early notice to the State as employer of agents who are engaged in bad acts is extraordinarily important. Government is intent upon learning sooner rather than later that they have individuals in their ranks that are violating the Constitution. And this Court in Wallace, in turning aside basically the same extension of heck that is recommended for the Court or the Court's invited to take in this very case, when they turned it away, they said, one of the reasons is we need notice to the would-be defendants in those cases. They can preserve evidence to ensure that there's — You know, Counselor, it's not as if most States don't receive that kind of notice in these situations. The defendants are just not believed in most until some independent evidence is discovered long after the conviction. In my experience, and you can point to one that's different, I've never come across any of these cases where any defendant falsely accused of a crime hasn't vigorously announced his or her innocence and vigorously tried to tell the authorities this police officer is corrupt. So I'm not — I don't know what extra notice you need other than that. Well, this — the situation is unique. We're talking about total fabrication. You have so many other ways out of liability — qualified immunity, franks. There are so many other protections against the State and individual officers for errors. But why should we worry about you not receiving notice? The reason, Your Honor, is that in this case, the later accrual principle that Petitioner requests under Heck, or as a matter of a common law element, is purchased not only at the price of delayed notice to the would-be defendant. It's purchased at the price of closing the courthouse door on a number of potential Fourth Amendment claimants, those who are subject to unlawful arrest but are later validly convicted. This Court's — Mr. Scodro, can I ask — I might be misunderstanding this, so you'll tell me if I am. But it seems as though the position that you're taking now is diametrically opposed to the position that you took in the Seventh Circuit. So I'll just read you something. And this is from oral argument, but my clerk tells me that this is what happened — I think that there's not a transcript, but maybe there is, but at least this is what my clerk tells me happened at oral argument. Judge Rovner says there are ten other circuits that have now recognized this kind of claim, this kind of Fourth Amendment claim. And she said, let's just assume that we do what those ten other circuits have done, which, of course, they didn't do. But she says, let's just assume it. At what point would you think the statute of limitations would begin to run? And then you — or maybe not you, but you — Right. You say, well, if you were to recognize such a claim — Yes. — the accrual is the time at which the proceedings are terminated in favor of that individual. So in this case, it would be — I think the date would have been May 4, 2011. And then Chief Judge Wood says, so you're assuming that the constitutional tort would follow the same pattern that State law does and require the favorable termination, because if there's no favorable termination, for all the policy reasons, the States have considered there's no injury. And again, whoever the lawyer was said, that's correct. So am I misunderstanding this, or are you saying that's not correct, that's wrong? I think that that is correct insofar as what the lawyer was being asked, as I understand it, having also listened to the argument, Your Honor, is that — Is there no transcript for this? I am not aware of a transcript. The Seventh Circuit makes — actually, part of that quote appeared in the reply brief in support of the cert petition. And what that quote makes clear, it seems to me, what the lawyer is being asked is, if we are to follow suit, what — again, taking it back to what was — this was on a motion to dismiss on limitations grounds. The — if they're not able to establish that they have an accrued claim or a claim with a delayed accrual sufficient to satisfy the limitations period under a traditional Fourth Amendment theory, can we overcome this limitations period by virtue of these common law elements? What the attorney was being asked, as I — as I heard that argument, what the attorney was being asked is, isn't — do you agree that what they're trying to do here is join what every other circuit has done? And if we join what every other circuit has done, they would have a favorable termination element. Or — Oh, I don't think that that's — I mean, maybe, I guess. I mean, it seems to me that the much more natural way of understanding this is to say, look, if we do what every other circuit has done in the sense that we acknowledge that there is a Fourth Amendment claim here, post-legal process, something which you yourself have now acknowledged today, that if we acknowledge that, what would the accrual date be? And then the lawyer says the accrual date would be the date of termination. Sure. And — and — and now you're saying it wouldn't be. And I actually don't know whether it should be or it shouldn't be. I don't think the Seventh Circuit, for a moment, considered that question. And I guess it's another reason why I think we should just send the whole thing back. The Seventh Circuit can figure out whether you forfeited this claim. The Seventh Circuit can figure out if you didn't forfeit this claim, what the right answer is. But to me, this language — and I have not listened to the tape myself, so I have to admit that — but to me, this language suggests that you forfeited this. Yeah. Your Honor, as I — again, in context, I think what the lawyer was being asked is, if they get the benefit — and I believe the quote in the reply in support of the — the part of the quote that appears in the reply in support of the cert petition includes a reference to, well, if — along with the common law elements, the lawyer is saying, yes, if they were to get the benefit, this is what they're trying to do. I mean, no one denied it. What they were saying in their briefs was, we want the benefit of the four-element tort recognized in other circuits, most because they're just adopting wholesale the tort, a few because they seem to — they cite heck in lieu of the — in lieu of the common law element. And the question was, if we give them what they're asking for, that is, if this court follows those other courts, would they have a May 4th accrual date? And the answer is yes, because that's what they've been seeking all along. Why not? Look, the person is being held because the magistrate, listening to the policeman, detained him, and the magistrate and everybody was very unreasonable, da, da, da. Okay? Now he's there. Day one. Can he bring a case? Yes. Why not? He's being — day two. Yes. And he's being held for 90 days. And I can say the same thing — I won't — up to each of the 90 days. 90th day he's released. It's now the 91st day. Can he bring it? Yes. But now we only have two years. Why only two years? Because we're looking for an analogous statute on the State to give us a limit. And the analogous one, though not perfectly fitting, is malicious prosecution. And that had two years. And that's why two years after the release date is the longest — you better bring it before then because that's two years since you were unlawfully held. Now, what's wrong with what I just said? Well, Your Honor, two points in response to that. The first would be, Wallace says, or holds, that if you have the claim on day one, then that — it is — it's accruing on day one. We're not going to give you — there's no extant conviction. It is a different claim. One claim is for arrest, and the other is for prolonged detention. They're two different claims. That's why I took issue with you when you said, if you hold for this petitioner, then people who are falsely arrested but properly convicted will have no claim. I don't — I don't see that. They have a false arrest claim. They don't have a prolonged detention claim. Well, Your Honor, I think what would happen, they wouldn't have a claim based on misstatements at the Gerstein hearing if, in order to make out that claim, as petitioners contend, they would have to show that ultimately their criminal litigation terminated in their favor. That's the request. If we — if heck is extended or the common law element is extended — and this is why it's not the best analog, Your Honor — and if it would be helpful to have a common law point of guidance on this, in footnote 12 of our brief, we provide a list of common law cases, an example of common law cases in which the court addressed a question like this. We have an ex parte proceeding in which a magistrate has issued a warrant. I'll take the Stewart case, which is the third of the three cited. The person serves six months in jail on the warrant, but there's never a prosecution. It never blossoms. He's released, and he sues for malicious prosecution. And the defendant in the malicious prosecution contends that they're not — that they're unable to show successful outcome. They weren't. So what's your view? What's the best one? What's the best analogy? It's this form of malicious prosecution where you didn't have to prove favorable termination because all that was against you at that point was an ex parte determination. The State law like that? This was the common law. What is your opinion? What is the State law that does apply the best analogy? I think the closest analogy is false arrest. False arrest. Okay. So now what is the statute of limitations for false arrest? The State law, it's still the personal injury limitations period of two years. Okay, fine. So he was being detained for up to, let's say, the 90th day. He's still being detained. So now we'll count the 90th day as the beginning of the two-year running, and so now we run it for two years, and it's still May 12th or whatever. But, Your Honor, a false arrest claim under Wallace accrues once process begins. So it's not running for that 90 days. Why not? It would have accrued. Well, as we explain it. I mean, isn't he being held unlawfully on the 41st day? And after all, we're not copying the State law. All we're doing is trying to find an analogous period of time. But, Your Honor, by imposing the favorable termination element of the common law claim, it would run headlong into the Fourth Amendment aims, what the Fourth Amendment is geared to vindicate. The Fourth Amendment, this Court has held, is there for the guilty and innocent alike. And in this case, the cost of borrowing that favorable termination element and importing it into a claim based solely on lies in an ex parte proceeding, which is what we're talking about with the Gerstein hearing, doing so would mean that if you're the victim of lies at a Gerstein hearing and you're detained, but ultimately you are constitutionally convicted as evidence amasses against you, the need to show favorable termination, it will be impossible for that plaintiff. And so the Fourth Amendment right will not be something that that plaintiff can vindicate. That's the reason that Wallace didn't allow Heck to expand to instances like this, where you're not challenging the wrongful conviction itself. And what they have asked, their claim is narrow, and the way to resolve this case is now equally narrow. The way to resolve the case is to conclude that whenever this — your Fourth Amendment claim could run through the arraignment after indictment in this case, which was still out of the two-year limitations period. But it doesn't — it is not entitled to that favorable termination element, which would have the effect of closing off the courthouse doors to a universe of claims in order to buy extra time in this case. And that is what we urge the Court not to do. And that is the simplest way. Ginsburg. If you're falsely arrested, you have a good claim for false arrest. It doesn't matter that you were properly convicted. But if you are not only falsely arrested, but if your detention continues, then you have a claim for the continued detention. For violation of the Gerstein hearing, Your Honor, and I do — for lies at the Gerstein, and I do want to be clear in saying that the closest analogous tort is false arrest, that is treating it the way I think the Seventh Circuit has, which is that it runs up until what we call the first appearance, where you have the initiation of adversarial process. By no means does the limitations period or is there a tolling that runs from the period of the lie at the Gerstein hearing through the pretrial period. As I said at the outset, that is subject to traditional tort, common law principles of proximate cause, and there may well be damages recoverable for that period. But it's based on the lie at the Gerstein hearing, and as Wallace held, heck, cannot be extended to apply to a claim that exists before you have an extant conviction. Kennedy. Just one more time. Suppose you have arrest, Gerstein hearing, filing of formal charges, either information or indictment, pretrial suppression hearing at which both parties are represented — Yes. — and the false evidence is not — its falsity has not been known, and so you're detained, and then trial. When does the Fourth Amendment violation end? Sure. You would have it — this returns to Justice Ginsburg's point. You would have a Fourth Amendment claim for the initial warrantless arrest. You would have a Fourth Amendment claim for misstatements at a Gerstein hearing that then led to ongoing pretrial seizure. And the damages from that claim may run throughout the period of pretrial seizure, but with regard to the nature of the constitutional violation that occurs at subsequent processes, be they grand jury, bail hearings, preliminary hearings, those are traditional due process claims. Consistent with this Court's holding in Mooney, frankly, in Brady, which has applied due process to prosecutorial duties and police duties during that period. So I hope that answers Your Honor's question. Whether or not those damages run throughout that period or whether they're reduced by virtue of an intervening cause would be a question — application of traditional proximate cause. I understand. Are opposing counsel — defendants counsel ever present at a Gerstein hearing? Generally, in this case, yes. Often they are because the Gerstein determination is frequently made as part of the first appearance, which is to say — which is the moment in time which this Court has held you have a Sixth Amendment — your Sixth Amendment right attaches. May I complete the answer, Your Honor? I'm sorry? May I complete the answer? You have more? Go ahead. Thank you. Thank you. So I want to return to the point I was making, which is now — I apologize. I don't know if I've answered Your Honor's question. You were talking about that the — Yes. The Gerstein hearing is often combined. It's often combined with the first appearance. And the reason — actually, this Court has contemplated that in Roth, Gary, and in Gerstein itself. It's often a matter of convenience that at that point it's when the individual is informed of the charges, their Sixth Amendment right attaches, and bail is set as well. Thank you. Thank you, counsel. Thank you. Mr. Eisenhamer, you have three minutes remaining. Thank you. Just to answer Justice Kennedy's question about reasonable error on a detention, in that situation, the officer would have the qualified immunity defense that would — assuming it was objectively reasonable, he would be protected in that situation. With respect to the Seventh Circuit's decision — But there still is a Fourth Amendment violation? There's still a Fourth Amendment violation. But he would have qualified immunity if he acted with objective reasonableness. Because the Fourth Amendment doesn't have any intent to either violate it or not violate it. There is either probable cause or not. And then you could superimpose qualified immunity. The Seventh Circuit would have said that there is no Fourth Amendment right whether or not the petitioner filed his claim three years, four years, a million years ago, or the day after he was released. That's their position. So that's why we're here on the question whether this is a Fourth Amendment violation. We reject the Seventh Circuit's view that it's a due process. So you don't care that we don't reach the statute of limitations? Correct. But I do want to note that the Seventh Circuit, with respect to the statute of limitations of their accrual point, uses favorable termination in their due process cases. What happens in this situation? The person is initially arrested and held for a period of time based on fabricated evidence. But then before trial, shortly before trial, other valid evidence is gathered, and the person is convicted at the trial. Now, does that person have the kind of claim that you are asserting? And if so, when would the claim accrue? Would the favorable termination defeat the claim? The favorable, he would, at that point, if you use Heck as the case that covers this particular issue, he would not, since he was convicted under Heck, he would not be able to bring the claim if that claim attacks the conviction. If it doesn't attack the conviction, as the court sort of pointed out in, I think suppression hearings or on evidence. I'll say it attacks the unlawful detention. So it would not be defeated by the conviction. Not the conviction. It would not be defeated by the favorable. I would say under Heck, the Heck exception, they could bring suit. But when would the claim accrue? I think it would accrue at that point, at the conviction, as I read Heck. Because I think it would be unfair, it would be, in this particular case, it would be unfair to the individual to speculate on whether, what evidence comes out at the trial to determine whether or not that really, that probable cause determination may or may not attack the. Well, if the outcome of the trial is irrelevant to the Fourth Amendment claim, as it would seem to be in the case of an unlawful detention, then why should the claim not, why should the accrual of the claim be tied to the termination of the prosecution? Because at the time it has occurred, well, two reasons. You don't know at that time whether or not it does attack the conviction. And second, you don't want, because you don't know whether that evidence heard at the Kirstein hearing may or may not, some of it may come in, some of it may not. And then the other issue is that you don't want parallel litigation going on or collateral attacks for many of the reasons that was stated in Caley. Thank you, counsel. The case is submitted.